UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Lorralne R. Pettie
_____

_____

_____

*(In the space above enter the full name(s) of the plaintiff(s).)*

-against-

Cadwalader, Wickersham & Taft, c/o Tracey Breslln; attorneys:
_____

Gregg Prindle; Lisa Pauquette; Michael McCormack;
_____

and Word Processing Mananger Kenneth Herbert
_____

*(In the space above enter the full name(s) of the defendant(s).
If you cannot fit the names of all of the defendants in the space
provided, please write "see attached" in the space above and
attach an additional sheet of paper with the full list of names.
Typically, the company or organization named in your charge
to the Equal Employment Opportunity Commission should be
named as a defendant. Addresses should not be included here.)*

# 16 CV 2883

**COMPLAINT
FOR EMPLOYMENT
DISCRIMINATION**

Jury Trial:  ☒ Yes   ☐ No

*(check one)*

RECEIVED SDNY PRO SE OFFICE
2016 APR 18 PM 4:53
U.S.D. OF N.Y.

This action is brought for discrimination in employment pursuant to: *(check only those that apply)*

☒  Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e
to 2000e-17 (race, color, gender, religion, national origin).
*NOTE: In order to bring suit in federal district court under Title VII, you must first obtain a
Notice of Right to Sue Letter from the Equal Employment Opportunity Commission.*

☐  Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§
621 - 634.
*NOTE: In order to bring suit in federal district court under the Age Discrimination in
Employment Act, you must first file a charge with the Equal Employment Opportunity
Commission.*

☒  Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 -
12117.
*NOTE: In order to bring suit in federal district court under the Americans with Disabilities Act,
you must first obtain a Notice of Right to Sue Letter from the Equal Employment Opportunity
Commission.*

☐  New York State Human Rights Law, N.Y. Exec. Law §§ 290 to 297  (age,
race, creed, color, national origin, sexual orientation, military status, sex,
disability, predisposing genetic chacteristics, marital status).

☐  New York City Human Rights Law, N.Y. City Admin. Code §§ 8-101 to
131 (actual or perceived age, race, creed, color, national origin, gender,
disability, marital status, partnership status, sexual orientation, alienage,
citizenship status).

## I.    Parties in this complaint:

A.    List your name, address and telephone number.  Do the same for any additional plaintiffs named. Attach additional sheets of paper as necessary.

Plaintiff          Name  Lorraine R. Pettie
                   Street Address  1755 Arnow Avenue
                   County, City Bronx, New York
                   State & Zip Code 10469
                   Telephone Number  (347) 825-0090

B.    List all defendants' names and the address where each defendant may be served.  Make sure that the defendant(s) listed below are identical to those contained in the above caption.  Attach additional sheets of paper as necessary.

Defendant          Name  See attached
                   Street Address
                   County, City
                   State & Zip Code
                   Telephone Number

C.    The address at which I sought employment or was employed by the defendant(s) is:

                   Employer  Cadwalader, Wickersham & Taft
                   Street Address  200 Liberty Street
                   County, City  New York, New York
                   State & Zip Code  10281
                   Telephone Number  212 504-6000

## II.    Statement of Claim:

State as briefly as possible the facts of your case, including relevant dates and events.  Describe how you were discriminated against.  If you are pursuing claims under other federal or state statutes, you should include facts to support those claims.  You may wish to include further details such as the names of other persons involved in the events giving rise to your claims.  Do not cite any cases.  If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph.  Attach additional sheets of paper as necessary.

A.  The discriminatory conduct of which I complain in this action includes: *(check only those that apply)*

          _____          Failure to hire me.

          _____          Termination of my employment.

          __X__           Failure to promote me.

          __X__           Failure to accommodate my disability.

          __X__           Unequal terms and conditions of my employment.

*Rev. 05/2010*                                    2

X       Retaliation.

_____     Other acts *(specify)*: _____.

**Note:** *Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.*

B.     It is my best recollection that the alleged discriminatory acts occurred on: See attached     .
                                                                                     *Date(s)*

C.     I believe that defendant(s) *(check one)*:

_____       is still committing these acts against me.

X         is not still committing these acts against me.

D.     Defendant(s) discriminated against me based on my *(check only those that apply and explain)*:

   ☒     race  _____        ☐     color _____

   ☐     gender/sex  _____        ☐     religion_____

   ☐     national origin _____

   ☐     age.    My date of birth is _____ *(Give your date of birth only if you are asserting a claim of age discrimination.)*

   ☒     disability or perceived disability, post-laminectomy syndrome _____ *(specify)*

E.     The facts of my case are as follow *(attach additional sheets as necessary)*:

See attached _____

_____

_____

_____

_____

_____

_____

_____

**Note:** *As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, the New York State Division of Human Rights or the New York City Commission on Human Rights.*

## III.    Exhaustion of Federal Administrative Remedies:

A.     It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding defendant's alleged discriminatory conduct on: ~~December 11, 2015~~ December 4, 2016 _____ *(Date)*.

B.    The Equal Employment Opportunity Commission *(check one)*:

_____    has not issued a Notice of Right to Sue letter.

___✕___    issued a Notice of Right to Sue letter, which I received on January 23, 2016    *(Date).*

*Note: Attach a copy of the Notice of Right to Sue letter from the Equal Employment Opportunity Commission to this complaint.*

C.    Only litigants alleging age discrimination must answer this Question.

Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding defendant's alleged discriminatory conduct *(check one)*:

_____    60 days or more have elapsed.

_____    less than 60 days have elapsed.

## IV.    Relief:

WHEREFORE, plaintiff prays that the Court grant such relief as may be appropriate, including injunctive orders, damages, and costs, as follows: See attached.

_____

_____

*(Describe relief sought, including amount of damages, if any, and the basis for such relief.)*

**I declare under penalty of perjury that the foregoing is true and correct.**

Signed this 18 day of April          , 20 16 .

Signature of Plaintiff    *Lo K Po*

Address    1755 Arnow Avenue
Bronx NY 10469
(347) 825-0090

Telephone Number    _____

Fax Number *(if you have one)* _____

## Addendum to Complaint
## Lorraine R. Pettie

1.B.

Cadwalader, Wickersham & Taft c/o Tracey Breslin, 200 Liberty Plaza, New York, N.Y. 10281;
Gregg Prindle, Cadwalader, Wickersham & Taft, 200 Liberty Plaza, New York, N.Y. 10281;
Lisa Pauquette, Cadwalader, Wickersham & Taft, 200 Liberty Plaza, New York, N.Y. 10281;
Michael McCormack, Cadwalader, Wickersham & Taft, 200 Liberty Plaza, New York, N.Y. 10281; and
Kenneth Herbert, Cadwalader, Wickersham & Taft, 200 Liberty Plaza, New York, N.Y. 10281.

- Failure to promote

    I have been a dedicated and stellar employee for 10 years demonstrated by my annual
    reviews. During my annual interview in April 2014 with Kenneth Herbert, WP Manager, I
    explained the change in scope of work and the overwhelming amount of static work and my
    2-hour limitation per doctor's request. I then requested a promotion for a coordinator's
    position and the need for assistance. My pleas for accommodation as a coordinator were
    thwarted with opposition. As a coordinator, I would have been accommodated with the
    ability to delegate and train others to help eliminate the overwhelming amount of static
    work that caused pain. There were other employees with less experience that were
    promoted without the inclusion or considerations of my request.

- Failure to accommodate my disability

    Because of a previous laminectomy ("back") surgery, it was known among the staff that I
    suffered residual pain when sitting without movement. On March 23 and March 24, 2015 I
    left work in pain from an overwhelming amount of static work that I believe was given to me
    with unnecessary constraints and deadlines without the required support. This job request
    was for 40 documents to be cleaned up, requested by Michael McCormack and repeatedly
    given to me by a first year associate. This document request was without identifications or
    numbers to locate them within our system and was repeatedly and only given to me,
    although there is a 24 hour word processing center. On March 24, the day of my medical
    separation, I walked to the word processing center to get help, only to be screamed at
    across the room by L. Herbison "We're swamped, we can't help you," although it appeared
    the center was not busy. I then attempted to reach out to the manager, for assistance, but
    did not receive a returned call. The manager, Kenneth Herbert did not return my call,
    although there is a relay to his email. Tests confirmed that I suffer from many occupational
    injuries from this static work and now have nerve damage along the S1 region. The
    excessive document review totally immobilized my body and stiffens my neck, shoulders,
    back and buttocks, when working for my intended purposes of word processing there is

movement and blood flow.  Here is an excerpt from Iowa University on the effects of static work:

- o   Static Postures

    Static postures (or "static loading") refer to physical exertion in which the same posture or position is held throughout the exertion. These types of exertions put increased loads or forces on the muscles and tendons, which contributes to fatigue. This occurs because not moving impedes the flow of blood that is needed to bring nutrients to the muscles and to carry away the waste products of muscle metabolism. Examples of static postures include gripping tools that cannot be put down, holding the arms out or up to perform tasks, or standing in one place for prolonged periods.

    The effects on the body from doing tasks that require long reaches are exacerbated where the reaches must be maintained for more than a very few seconds. Holding extreme postures places very high static loads on the body, resulting in rapid fatigue. Not only do the static postures add to the muscular effort required to do the task, but the lack of motion impedes the blood flow that is necessary for tissue recovery.

    The constricted blood flow reduces the supply of nutrients to the muscles and the removal of acids and other waste products away from the tissues. Reduced blood flow also slows down delivery of oxygen to the muscles.

    The longer or more frequently static loading occurs, the greater the risk of injury due to overuse of muscles, joints and other tissues.

- Unequal terms and conditions of my employment

    On or after October 2013 with the departure of my former manager, Rosemary Benvie, a systematic mutiny ensued.  There was increase of pain because of the unfair treatment and lack of support.  There were frequent interruptions and phone calls during my time off.  When I was sick with pain, they called me at home although there was a 24 hour word processing center to handle requests.  I believe the records will show that there was a malicious attempt to overburden me without the support, to treat me unfavorably (excluding me from overtime during the week) giving me the unfavorable task of document review while saving the more favorable work for my Susan.  Susan was treated more favorably with work, excessive overtime with minimal work, excessive comp time and unlimited support.

- Retaliation

    In August of 2013, I complained about the bullying to my then supervisor (Rosemary Benvie) and requested a workstation relocation to avoid the abusive, hostile and distracting work environment.  The relocation was granted and the retaliation of static work increased and the word processing work (editing documents) decreased.  Since Lisa Pauquette, Mike McCormack and Gregg Prindle were in charge of training the yearly incoming associates, my

Lorraine Pettie--2

involvement with the deals came close to non-existent unless it was for document review. Everyone was usually busy with work that was intended for me, which afterwards was usually rendered an inoperable document. Although there were many communications regarding my involvement to prevent document corruption, it appeared that I was thwarted with document review request for the same 400 page documents maybe 3 or 4 times before final print. The unnecessary stress when I was asked to fixed the document that took someone took 8 or more hours to do and screwed it up, and knowing that I could have completed the task in 2 hours, was maliciously intended to aggravate me and place me under undue stress when reviewing these documents for 3 or 4 hours to reformat. This limited type of work deprived me of my intended job duties and the inclusion of the learning curve within deals.

II.B.    September 2015, March 24, 2015, April 2014, October 2013, August 2013, and other incidents in my personal notes.

II.E.    The above-mentioned defendants were malicious and oppressive after I made pleas for accommodations due to back limitations. My job tasks were limited, given unnecessary deadlines and unsupported. The need to seek medical attention began to increase after October 2013. I was treated differently and my work environment became hostile and threatening. The limited work, segregation and abusive treatment deprived me of a safe working environment and eventually caused medical separation from a job that I once loved and excelled. Although it was known that I had limitations due to a condition of post-laminectomy syndrome, pleas for relief of pain were met with an increase in document review. My condition worsen when sitting without movement and when tensed or stressed. A conflict ensued between myself and Gregg Prindle and witness by L. Pauquette. Gregg requested, for a third time, for me to perform a document format review on a 400 page prospectus supplement that he word processed. I made it clear that this 3rd review caused pain and was unnecessary and abusive because there was a disregard for the work that I did and had to do it over again. Gregg response was hostile and he cursed at me and rarely gave work to me after the spat. Since Gregg was in charge of training most of the incoming attorneys, this document review request became the only requests I received which caused a great deal of pain and stress for me and the department's ability to meet deadlines. The change in scope of my job duties, limited my involvement in the department's deals, segregated me from the department. These frequent and repeated requests of document review, forced a detrimental static strained position which resulted in several prolapse discs in my neck, thoracic and lower back. I also suffer with carpel tunnel and hip bursitis because these requests were so excessive. I complained to my doctor's and let them know that my job caused a great deal of pain and depression.

It was known that I was dedicated and loved my job and usually exceeded most attorneys' expectations, but these defendants would not allow me to be comfortable, supported or included and the excessive repeated static work was used as a means of constructive termination. The stiffening of my back during this motionless review of documents further exacerbated occupational injuries. The employer's intentional disregard and unlawful practice of limiting, segregating and reclassifying my duties, deprived

Lorraine Pettie--3

me of my intended purpose and the normal comfort ability in a workplace which affected my mental and physical health.

1.  In September 2015, I attempted to return to work from a 6-month medically leave. Although my manager had five (5) days to review doctor's restriction note he stormed to my desk to harass me about the static work in the doctor's note and it became heated discussion and he stated it was my job and I would have to take up with Human Resources. He then stated "If Gregg Prindle gives you a cleanup job you can't do it?" The pain and anxiety returning to this hostile and static work environment caused many failed attempts to get back to work. I was traumatized and sought psychiatric help in order to evaluate my fear to return to work. Although I demonstrated good performance, integrity and dedication the mistreatment was unjust and unfair and different from my coworker. I was so distressed on this day that I met with Human Resources Manager, Tracey Breslin and she noted my issues and we were to meet the next day, but I was in too much pain and realized that my attempt to return to work would cause more harm because of the lack and unwillingness to accommodate my illness. The employer's intentional disregard for my pain and suffering caused medical separation from my job.

2.  During my annual review in April 2014, Kenneth Herbert inquired about the bullying incident and why I changed my workstation location. Thereafter, I was not only bullied by the attorneys, but no longer was supported by management. The normal course and protocols were not upheld, I was left unhinged and I no one to confide and/or support me. A systematic mutiny ensued and I became alienated from the word processing department, alienated from the attorneys in my department, ridiculed and ostracized. I was ignore during the week without the opportunity to work overtime like Susan and disrupted during my time off during the weekend to come into work, but usually once I arrived, told to go back home because I was not needed. Without management's support of analyzing, quantifying and reviewing my productivity, I was left for prey in a hostile environment that constantly made me feel tension pain, unwelcomed, threatened and harassed with either no work or work in the last hour which prompted stress from document review work to intentionally cause physical and mental harm. Accommodations of constant center support would have prevented my injuries and if the requested authority to delegate some of the work was awarded, I believe my injuries would have been prevented. The employer's actions were willful, malicious and oppressive.

3.  Gregg Prindle, Cadwalader, Wickersham & Taft, 200 Liberty Plaza, New York, N.Y. 10281 Gregg's unreasonable behavior caused mental anguish and pain. Since he trained most of the incoming attorneys, he had the ability to systematically campaign my interpersonal destruction that jeopardized my health and job I once loved. He controlled a lot of deals and abused and limited my work load to document review. Delving my word processing duties to unskilled employees, excluding and limiting my workload to document review of ill-formatted documents rendered and deemed inoperable, was a malicious intent to cause pain and provoke mental anguish. The document review work exacerbated my back and now has caused damage throughout the S1 region. Gregg was very hostile after a dispute

Lorraine Pettie--4

regarding my exclusion from document production process and retaliated by training all incoming attorneys to disregard me in the document process and limit me to document review. He would frequently offend me with comments and have loud distracting gatherings outside of his office diagonally from my desk. He once had a paralegal just dump a pail of garbage in my workstation. Gregg Prindle appeared to get kicks from bullying me. After a series of irate incidents, he violently damaged two desk drawers and then banged on the copier until it broke; I moved my work station because he was so volatile. Defendant created a hostile environment which affected my health. Actions were intended to oppress, humiliate, offend, intimidate and distress me.

4. Lisa Pauquette, Cadwalader, Wickersham & Taft, 200 Liberty Plaza, New York, N.Y. 10281. Lisa made me feel intimidated, unwelcomed, insulted and humiliated because of my disability and race. The unlawful harassment caused a hostile work environment. After my workstation relocation, I was excluded from working on many her deals which alienated me from the department and attorneys. The infrequent work left me without the learning curve opportunities and know-how offered to other employees. She also limited my work to document review with the knowledge that this caused great pain. When I communicated the bullying incident, I was victimized which caused a vindictive 'payback' for speaking out. Lisa enabled a culture of workplace bullying and flourished in a combative workplace of mistreatment. This public belittling humiliation continued to escalate and became the behavior that was replicated by others. Defendant created a hostile environment which affected my health. Actions were intended to oppress, humiliate, offend, intimidate and distress me.

5. Michael McCormack, Cadwalader, Wickersham & Taft, 200 Liberty Plaza, New York, N.Y. 10281. Defendant practiced unlawful employment practices by training others to limit and ostracize me from my normal duties. He frequently humiliated and berated me in front of others. These psychological assaults, dated in my notes, interfered with my work. Defendant created a hostile environment which affected my health. Actions were intended to humiliate, offend, intimidate and cause mental anguish.

6. Kenneth Herbert, Cadwalader, Wickersham & Taft, 200 Liberty Plaza, New York, N.Y. 10281. During my annual review in April 2014, Kenneth Herbert inquired about the bullying incident and why I changed my workstation location. Thereafter, I was not only bullied by the attorneys, but no longer was supported by management. A systematic mutiny ensued and I became alienated from the word processing department, alienated from the attorneys in my department, ridiculed and ostracized. I was ignore during the week without the opportunity to work overtime like Susan and disrupted during the weekend to come into work, but usually once I arrived, told to go back home because I was not needed. My annual review was stellar and I requested a promotion to delegate some of my responsibilities. Although there are employees with less experience, they received promotions. Defendant knowingly created a hostile environment by not supporting me and not accommodating my limitations which affected my health. Inactions of support were intended to segregate, humiliate and cause distress.

II.E.

Judgment:  I pray the maximum monetary compensation of $500,000 for my mental anguish, pain/suffering, medical bills and transportation.  My hope is that it is EEOC's responsibility to eliminate this criminal type of malicious internal terrorism which is dangerous and cultivates individuals to have stress that promotes physical injuries, strokes, heart attacks and depression and also lends the opportunity for harassed employees to become radical.

EEOC Form 161-B (11/09)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

To: Lorraine Pettie
1755 Arnow Avenue
Bronx, NY 10469

From: New York District Office
33 Whitehall Street
5th Floor
New York, NY 10004

☐ On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 520-2016-00549 | Ashraf Ahmed, Investigator | (212) 336-3781 |

(See also the additional information enclosed with this form.)

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

☐ More than 180 days have passed since the filing of this charge.

☒ Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☒ The EEOC is terminating its processing of this charge.

☐ The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, the paragraph marked below applies to your case:

☐ The EEOC is closing your case. Therefore, your lawsuit under the ADEA must be filed in federal or state court WITHIN 90 DAYS of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

☐ The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Kevin J. Berry,
District Director

1/11/2016
(Date Mailed)

Enclosures(s)

cc:   Tracey Breslin
Director of Human Resources
CADWALADER WICHERSHAM & TAFT
200 Liberty Street
New York, NY 10281

520·2016·00549



# EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
## INTAKE QUESTIONNAIRE

Please immediately complete the entire form and return it to the U.S. Equal Employment Opportunity Commission ("EEOC"). **REMEMBER, a charge of employment discrimination must be filed within the time limits imposed by law, generally within 180 days or in some places 300 days of the alleged discrimination. Upon receipt, this form will be reviewed to determine EEOC coverage. Answer all questions as completely as possible, and attach additional pages if needed to complete your response(s). If you do not know the answer to a question, answer by stating "not known." If a question is not applicable, write "n/a." Please Print.**

**1.    Personal Information**

Last Name: PeHic          First Name: Lorraine    MI: R.

Street or Mailing Address: 1755 Arnow Avenue          Apt Or Unit #: PH

City: BRONX          County: NY          State: NY    ZIP: 10469

Phone Numbers: Home: (347) 326 - 8905    Work: (    ) N/A

Cell: (347) 825 - 0090    Email Address: soffly@aol.com

Date of Birth: 8/6/62    Sex: Male ☐  Female ☑    Do You Have a Disability? ☑Yes  ☐ No

**Please answer each of the next three questions.**    i. Are you Hispanic or Latino?    ☐ Yes  ☑No

ii. What is your Race? Please choose all that apply.    ☐ American Indian or Alaska Native    ☐ Asian    ☐ White

☑ Black or African American    ☐ Native Hawaiian or Other Pacific Islander

iii. What is your National Origin (country of origin or ancestry)?    USA

**Please Provide The Name Of A Person We Can Contact If We Are Unable To Reach You:**

Name: Samara PeHic          Relationship: Daughter

Address: 1755 Arnow Ave    City: BRONx    State: NY  Zip Code: 10469

Home Phone: (347) 326 -8905 Other Phone: (718) 878 - 0545

**2. I believe that I was discriminated against by the following organization(s): (Check those that apply)**

☑ Employer    ☐ Union    ☐ Employment Agency    ☐ Other (Please Specify) _____

**Organization Contact Information** (If the organization is an employer, provide the address where you actually worked. If you work from home, check here ☐ and provide the address of the office to which you reported.) **If more than one employer is involved, attach additional sheets.**

Organization Name: Cadwalader, Wickersham & Taft

Address: 200 Liberty Street          County: _____

City: New York    State: NY  Zip: 10281    Phone: (212) 504 -6000

Type of Business: Law Firm    Job Location if different from Org. Address: N/A

Human Resources Director or Owner Name: Tracey Breslin          Phone: 212 504 -6000

Number of Employees in the Organization at All Locations: Please Check (√) One
☐ Fewer Than 15    ☐ 15 - 100    ☐ 101 - 200    ☐ 201 - 500    ☑ More than 500

**3.  Your Employment Data** (Complete as many items as you can)    Are you a Federal Employee? ☐Yes ☑No

Date Hired: 10/11/2004    Job Title At Hire: Word Processor

Pay Rate When Hired: $ 61,000    Last or Current Pay Rate: $ 73,000

Job Title at Time of Alleged Discrimination: Word Processor  Date Quit/Discharged: 3/24/15

Name and Title of Immediate Supervisor: Kenneth Herbert

2

If Job Applicant, Date You Applied for Job __N/A__    Job Title Applied For __N/A__

**4. What is the reason (basis) for your claim of employment discrimination?**

*FOR EXAMPLE, if you feel that you were treated worse than someone else because of race, you should check the box next to Race. If you feel you were treated worse for several reasons, such as your sex, religion and national origin, you should check all that apply. If you complained about discrimination, participated in someone else's complaint, or filed a charge of discrimination, and a negative action was threatened or taken, you should check the box next to Retaliation.*

[✓] Race    ☐ Sex    ☐ Age    [✓] Disability    ☐ National Origin    ☐ Religion    [✓] Retaliation    ☐ Pregnancy    ☐ Color (typically a difference in skin shade within the same race) ☐ Genetic Information; choose which type(s) of genetic information is involved:

☐ i. genetic testing    ☐ ii. family medical history    ☐ iii. genetic services (genetic services means counseling, education or testing)

If you checked color, religion or national origin, please specify: __N/A__

If you checked genetic information, how did the employer obtain the genetic information? __N/A__

Other reason (basis) for discrimination (Explain). _____

**5. What happened to you that you believe was discriminatory?** Include the date(s) of harm, the action(s), and the name(s) and title(s) of the person(s) who you believe discriminated against you. **Please attach additional pages if needed.**
*(Example: 10/02/06 - Discharged by Mr. John Soto, Production Supervisor)*

A) Date: 9/30/15    Action: Refused to make accomodations due to my dissbility.

Name and Title of Person(s) Responsible: _____

B) Date: 9/30/15    Action: Kenneth Herbert; Michael McCormack

Name and Title of Person(s) Responsible: manger & attorney

**6. Why do you believe these actions were discriminatory?** Please attach additional pages if needed.

Please see the attached.

**7. What reason(s) were given to you for the acts you consider discriminatory? By whom? His or Her Job Title?**

The persistent interruptions were considered teasing but I felt I was mentally & physically harassed. My manager explained that this was my Job and if I refused he could nc validate m. emp

**8. Describe who was in the same or similar situation as you and how they were treated.** For example, who else applied for the same job you did, who else had the same attendance record, or who else had the same performance? Provide the race, sex, age, national origin, religion, or disability of these individuals, if known, and if it relates to your claim of discrimination. For example, if your complaint alleges race discrimination, provide the race of each person; if it alleges sex discrimination, provide the sex of each person; and so on. Use additional sheets if needed.

Of the persons in the same or similar situation as you, who was treated *better* than you?

| A. Full Name | Race, sex, age, national origin, religion or disability | Job Title |
|---|---|---|
| Susan Solmonte | White, 55, Female | Word Processor |

Description of Treatment

| B. Full Name | Race, sex, age, national origin, religion or disability | Job Title |
|---|---|---|
| | | |

Description of Treatment

Susan Solmonte received favuable treatment. See the attached

Of the persons in the same or similar situation as you, who was treated *worse* than you? I was always the last on' [3] I is

| A. Full Name | Race, sex, age, national origin, religion or disability | Job Title |
|---|---|---|
| N/A | | |

Description of Treatment

| B. Full Name | Race, sex, age, national origin, religion or disability | Job Title |
|---|---|---|
| | | |

Description of Treatment

Of the persons in the same or similar situation as you, who was treated the *same* as you?

| A. Full Name | Race, sex, age, national origin, religion or disability | Job Title |
|---|---|---|
| N/A | | |

Description of Treatment

| B. Full Name | Race, sex, age, national origin, religion or disability | Job Title |
|---|---|---|
| | | |

Description of Treatment

Answer questions 9-12 <u>only</u> if you are claiming discrimination based on disability. If not, skip to question 13. Please tell us if you have more than one disability. Please add additional pages if needed.

9.   Please check all that apply:

☐   Yes, I have a disability

☑   I do not have a disability now but I did have one

☐   No disability but the organization treats me as if I am disabled

10.  What is the disability that you believe is the reason for the adverse action taken against you?  Does this disability prevent or limit you from doing anything? (e.g., lifting, sleeping, breathing, walking, caring for yourself, working, etc.).

Post laminectomy syndrome = I complained about the pain attorneys corrupting documents and excluding my expertise and the pain I endure repairing documents.

11.  Do you use medications, medical equipment or anything else to lessen or eliminate the symptoms of your disability?

Yes ☑   No ☐

If "Yes," what medication, medical equipment or other assistance do you use?

muscle relaxers; pain medication; anti-inflamation and anti-depressants.

12.  Did you ask your employer for any changes or assistance to do your job because of your disability?

Yes ☑   No ☐

If "YES", when did you ask?  4/14          How did you ask (verbally or in writing)?  Verbally

Who did you ask?  (Provide full name and job title of person)

Kenneth Herbert

Describe the changes or assistance that you asked for:  I ask for a promotion, but it was ignored; I asked for assistance but was denied

How did your employer respond to your request?

My word fell upon deaf ears. He ignored me and avoided dealing with me.

... ... there any witnesses to the alleged discriminatory incidents? If yes, please identify them below and tell us what they will say. (Please attach additional pages if needed to complete your response) *None that will jeopardize their jo*

| A. Full Name | Job Title | Address & Phone Number |
|---|---|---|
| N/A | | |

What do you believe this person will tell us?

| B. Full Name | Job Title | Address & Phone Number |
|---|---|---|
| | | |

What do you believe this person will tell us?

14. Have you filed a charge previously in this matter with EEOC or another agency?    Yes ☐    No ☑ *I attempted*

15. If you have filed a complaint with another agency, provide name of agency and date of filing:

*N/A*

16. Have you sought help about this situation from a union, an attorney, or any other source?    Yes ☐    No ☑
Provide name of organization, name of person you spoke with and date of contact. Results, if any?

Please check one of the boxes below to tell us what you would like us to do with the information you are providing on this questionnaire. If you would like to file a charge of job discrimination, you must do so either within 180 days from the day you knew about the discrimination, or within 300 days from the day you knew about the discrimination if the employer is located in a place where a state or local government agency enforces laws similar to the EEOC's laws. If you do not file a charge of discrimination within the time limits, you will lose your rights. If you would like more information before filing a charge or you have concerns about EEOC's notifying the employer, union, or employment agency about your charge, you may wish to check Box 1. If you want to file a charge, you should check Box 2.

Box 1    ☐ I want to talk to an EEOC employee before deciding whether to file a charge. I understand that by checking this box, I have not filed a charge with the EEOC. I also understand that I could lose my rights if I do not file a charge in time.

Box 2    ☑ I want to file a charge of discrimination, and I authorize the EEOC to look into the discrimination I described above. I understand that the EEOC must give the employer, union, or employment agency that I accuse of discrimination information about the charge, including my name. I also understand that the EEOC can only accept charges of job discrimination based on race, color, religion, sex, national origin, disability, age, genetic information, or retaliation for opposing discrimination.

_____    12/4/15
Signature                          Today's Date

PRIVACY ACT STATEMENT: This form is covered by the Privacy Act of 1974: Public Law 93-579. Authority for requesting personal data and the uses thereof are:
1. FORM NUMBER/TITLE/DATE. EEOC Intake Questionnaire (9/20/08).
2. AUTHORITY. 42 U.S.C. § 2000e-5(b), 29 U.S.C. § 211, 29 U.S.C. § 626, 42 U.S.C. 12117(a), 42 USC §2000ff-6.
3. PRINCIPAL PURPOSE. The purpose of this questionnaire is to solicit information about claims of employment discrimination, determine whether the EEOC has jurisdiction over those claims, and provide charge filing counseling, as appropriate. Consistent with 29 CFR 1601.12(b) and 29 CFR 1626.8(c), this questionnaire may serve as a charge if it meets the elements of a charge.
4. ROUTINE USES. EEOC may disclose information from this form to other state, local and federal agencies as appropriate or necessary to carry out the Commission's functions, or if EEOC becomes aware of a civil or criminal law violation. EEOC may also disclose information to respondents in litigation, to congressional offices in response to inquiries from parties to the charge, to disciplinary committees investigating complaints against attorneys representing the parties to the charge, or to federal agencies inquiring about hiring or security clearance matters.
5. WHETHER DISCLOSURE IS MANDATORY OR VOLUNTARY AND EFFECT ON INDIVIDUAL FOR NOT PROVIDING INFORMATION. Providing of this information is voluntary but the failure to do so may hamper the Commission's investigation of a charge. It is not mandatory that this form be used to provide the requested information.

I was hired in 2004, at $61,000 at Cadwalader as a Word Processor in 2004.    My belief is that due to bullying and retaliatory actions, I was forced to take medical leave from a job that I excelled at and loved.    On March 24 my employment ended because of a workplace injury caused by unfair treatment of overwhelming work and lack of support.    At the time of my leave my compensation was $73,000. My job was unique in that it allowed me to drive to work with a 4 day work week (Monday through Thursday) which lessened the back pain stress.    Due to my declining occupational injuries, it was difficult to seek employment elsewhere.

I was initially hired as a word processor operator within the Word Processing department, but then became a satellite word processing operator for the Capital Markets Department.    I was regarded as highly skilled and a professional service-oriented computer operator that exuded an intuitive, creative approach with my technical skills.    My work day started at 11:45 a.m. to 8:30 p.m.    I began my day off with an email notifying all attorneys and the Word Processing department of my arrival and availability for work.    There were approximately 35 attorneys in the Capital Market's department and if I was overwhelmed, per my job description, the WP Department would supply backup support and if I had downtime I would be called to help with wp department's overflow in order to validate my utilization. This did not happen as of late.    I was isolated from the department, no support was given and I began to get an overwhelming amount of static work which eventually caused me medical separation from my job.

On September 30, 2015 I attempted to return to work from medical leave.    Before returning to work, I submitted a doctor's note stating that I could no longer perform sedentary work.    Upon returning to work, my manager stormed to my desk and began to question me about the doctor's note even though he had, I think, 3 days to question me at home before I returned to work.    The questioning made me feel uncomfortable so I suggested we return to his office and he became hostile and stated I had no choice in the assignments and that was my job which was sedentary and I might have to take up the case of jeopardizing my job with Human Resources.    Attorney, Michael McCormack, stopped by and stated, "So you decided to give up living on government welfare...how's your daughter doing, drinking ...Lorraine, You're a failure."    At this time, I was already distraught and the stress and pain made me realize that the wp manager and some of the attorneys formed a mutiny to change the scope of my job which contributed to my occupational injuries and I would no longer be utilized for my intended word processing purpose.    The demeaning treatment and taunting became harassment.    I spoke with Tracy Breslin in Human Resources and explained that I had limitations and expressed the distress situations I constantly sustained.

On March 24, 2015 I suffered occupational injuries, I believe, from a constructive attempt to force me out of my position by maliciously inflicting mental and physical anguish.    My employer's intentional and egregious conduct to retaliate and demote the scope of my work from a creative, mobile word processing typing environment to a mundane, static, strained, insulting environment to create anguish, frustration and stress which caused occupational injuries such as cervical and thoracic bulging disc, carpel tunnel syndrome and hip bursitis.    The stress I received from my place of employment was not only physical but mental anguish also. I believe my health was being toyed with because of my complaints about the protocol of work and bullying that caused neck and back pain and mental anguish

that I experienced.    The records, I believe, will show that I received a great deal of pressure from the attorneys that required backup assistance and since I did not have support it jeopardized and aggravated a known pre-existing post laminectomy syndrome condition.    On March I left work ill because of being overburden with a large project.    I worked on this project for three days and although there is a 24 hour word processing center this overwhelming static task was held and repeatedly given to me.    The treatment I received was unethical, different and usually with malice and an attempt to overburden my workload without the required support from management.    I called Kenneth Herbert about my distress and he was not responsive to my needs.    It was his fiduciary duty to make sure work was equitably distributed.

My position required a utilization report in order to validate my position, so there was urgency for me to acquire work, but my word processing responsibilities were given to others and I was ignored during my shift from the attorneys and the wp department.    The scope of my duties were changed and demoted which resulted in work well below my skill level.    My primary duty, word processing, was delved out to less skilled persons and then turned over to me to troubleshoot, format and repair these documents. My time utilization changed with less work altogether except for repairing the documents and then there appeared to be great consistency of placing a lot of pressure on me an hour or so before the end of my shift to complete a task without overtime.    The pain in my neck, back and wrists relating to these occupational injuries from this static formatting work which required 3-4 hours of scouring, formatting and troubleshooting 300-400 page documents, resulted in bed rest during my time off on Fridays. Coupled with physical pain, I endured negative verbal and mental harassment.

During 2014 I began being isolated from Word Processing departmental duties and support from the department.    This led to an overburden of demands for static work cleanup which aggravated my pre-existing condition from laminectomy surgery.    This treatment had an impact on my neck, back and wrists.

Time [_____], I worked overtime and L. P. screamed at me regarding attorney's work, even though it was aknowledged that I was covering Susan's shift.

The next day L. Pauquette since a huge cross-referencing (formatting job) I worked on it between jobs and turned it over to Susan and she did not do it although her named was on the email.    This static work placed great stress and strain on my back condition.

I had to go into work and redo the job.

There was a job at 3:30 a.m. sent to me for cleanup and Susan works until 4:45 a.m. coupled with a 24 hour WP Department, and it was held for me.

Although my manager, Kenneth Herbert, reviewed my timesheets and noticed that I was busy or when I was slow, it was his and the attorneys to recklessly and intentionally, as per my job description, to incorporate me with the Word Processing Center to assist or receive assistance.    There was great resistance from everyone in the center once the previous manager left.    I worked diligently with the department prior to her departure, but afterwards, I was not acknowledge and left out of emails and

communications regarding overtime, and many other affairs of the department.

During my review with Kenneth Herbert 2014, I ask for a coordinator's position to alleviate the pressure from my position.    My request was not considered although my work productivity and reviews were outstanding and others who were hired after me and less experienced received promotions.

(Records will show a correlation with my doctor's appointment and a high volume of cleaning and formatting documents).

(Records and emails will show that once a rush was given to me, the documents were not needed or utilized after I submitted them).

(Records will show that there was a trend beginning and I was given complex work an hour before my the end of my shift and I was told to turn it over to Susan).

(Records will show that although the department charged my late arrivals, they did not pay for working overtime).

(Records will show that Susan was not overburden with formatting these documents).

(Records will show that Susan received assistance from the Word Processing Department, but I did not).

(Records will show that Susan received work from the Word Processing Department, but I did not.)

(Records will show that I was harassed to come into work on Fridays from weekend shift and Susan had a guaranteed overtime slot on Sunday nights).

(Records will show that Susan was not called at home and interrupted on her time off).

(Records will show that Susan received more overtime with less productivity).

(Records will show that I was deliberately bombarded and there were great spikes in utilization on Thursdays because they wanted me exhausted so I would not enjoy my time off on Fridays)

(Notes from doctors will show that I complained and was depressed from work)

(My personal notes documented the inappropriatness that I experienced on the job)

(Records will show that there were unnecessary deadlines, with unnecessary need for pressure.)

As a result of switching my desk because of feeling bullied, the degradation that I experienced every day and the unneccessary pressure put on me to complete projects was mentally and physically harmful to my health.    I would like to sue my employer in court for the full range of damages, including punitive damages, pain and suffering and mental anguish.